## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

PRISM TECHNOLOGIES LLC,

                Plaintiff,

     v.

RESEARCH IN MOTION, LTD.,

                Defendant.

Case No. 8:08-cv-00537-LES-TDT

**PRISM'S OPENING CLAIM
CONSTRUCTION BRIEF**

Raymond P. Niro
Dean D. Niro
Paul C. Gibbons
Robert A. Conley
NIRO, SCAVONE, HALLER & NIRO
181 West Madison Street, Suite 4600
Chicago, Illinois 60602
Phone: 312-236-0733
Fax: 312-236-3137

Michael C. Cox, #17588
Daniel J. Fischer, #22272
KOLEY JESSEN P.C., L.L.O.
One Pacific Place
1125 South 103rd Street, Suite 800
Omaha, Nebraska, 68124
Phone: 402-390-9500
Fax: 402-390-9005

*Attorneys for Plaintiff*
*Prism Technologies LLC*

# <u>TABLE CONTENTS</u>

<u>**Page**</u>

I.     INTRODUCTION ................................................................................... 1

II.    BACKGROUND ..................................................................................... 1

    A.    United States Patent No. 7,290,288 ............................................ 1

    B.    The Related United States Patent No. 6,516,416 ........................ 5

III.    THE CLAIMS OF THE RELATED '416 PATENT WERE CONSTRUED IN A RELATED LITIGATION ...................................... 6

IV.    THE RULES OF CLAIM CONSTRUCTION ..................................... 6

V.    PROPER CONSTRUCTION OF THE DISPUTED CLAIM TERMS ............................ 9

    A.    There Are Nine "Disputed" Claim Terms That Have Been Construed In Prior Litigation ................................................... 10

    B.    There Are Five Disputed Terms That Should Be Given Their Plain And Ordinary Meaning .................................................. 15

    C.    The Claim Terms That Require Construction ........................... 17

        1.    [2] "access server" ...................................................... 18

        2.    [5] "client computer device" ....................................... 19

        3.    [7] "Internet Protocol network" ................................... 20

        4.    [8] "clearinghouse" and [9] "authentication server" ................................ 21

            a.    Construction of [8] "clearinghouse" ............................................. 21

            b.    Construction of [9] "authentication server" ................................ 23

        5.    [19] "authorizing said client computer device" and [20] "to authorize at least one client computer device." ........................ 25

    D.    The Parties Have Agreed To The Construction Of One Term ........................... 26

VI.    CONCLUSION ...................................................................................... 27

## **TABLE OF AUTHORITIES**

**Page**

### **Federal Cases**

Advanced Cardiovascular System v. Medtronic, Inc.,
265 F.3d 1294 (Fed. Cir. 2001)..........................................................................................9

CAE Screenplates, Inc. v. Heinrich Fiedler GmbH & Co. KG,
224 F.3d 1308 (Fed. Cir. 2000)...............................................................................9, 18, 20, 22

Chef America Inc. v. Lamb-Weston, Inc.,
358 F.3d 1371 (Fed. Cir. 2004)..........................................................................................15

Cordis Corp. v. Medtronic AVE, Inc.,
339 F.3d 1352 (Fed. Cir. 2003)............................................................................................8

Golight, Inc. v. Wal-Mart Stores, Inc.,
355 F.3d 1327 (Fed. Cir. 2004)............................................................................................8

IP Innovations LLC. v. Mitsubishi Elect. Corp.,
2009 U.S. Dist. LEXIS 100647 (N.D. Ill. Oct. 29, 2009)...................................9, 11, 12

Jonsson v. Stanley Works,
903 F.2d 812 (Fed. Cir. 1990)...........................................................................................12

Laitram Corp. v. Morehouse Industrial,
143 F.3d 1456 (Fed. Cir. 1998)..........................................................................................12

Microsoft Corp. v. Multi-Technology System,
357 F.3d 1340 ....................................................................................................................12

NTP, Inc. v. Research in Motion, Ltd.,
418 F.3d 1282 (Fed. Cir. 2005)..........................................................................................12

Omega Engineering, Inc. v. Raytek Corp.,
334 F.3d 1314 (Fed. Cir. 2003)............................................................................................8

Phillips v. AWH Corp.,
415 F.3d 1303 (Fed. Cir. 2005).........................................................................6, 7, 8, 15

Prism Technologies, LLC v. VeriSign, Inc.,
512 F. Supp. 2d 174 (D. Del. 2007)..........................................................6, 10, 11, 13, 16, 19, 23

Rexnord Corp. v. Laitram Corp.,
274 F.3d 1336 (Fed. Cir. 2001)................................................................................8, 9

SRI International v. Matsushita Electric Corp.,
775 F.2d 1107 (Fed. Cir. 1985)..............................................................................7

SunRace Roots Enterprise Co., Ltd. v. SRAM Corp.,
336 F.3d 1298 (Fed. Cir. 2003)..............................................................................8

Tate Access Floors, Inc. v. Maxcess Technologies,
222 F.3d 958 (Fed. Cir. 2000)................................................................................9

Teleflex, Inc. v. Ficosa N. America Corp.,
299 F.3d 1313 (Fed. Cir. 2002)..............................................................................8

Tex. Digital System v. Telegenix Inc.,
308 F.3d 1193 (Fed. Cir. 2002)..............................................................................15

Vishay Dale Electrics v. Cyntec Co,
627 F. Supp. 2d 1050 (D. Neb. 2008) ....................................................................16

Vitronics Corp. v. Conceptronic, Inc.,
90 F.3d 1576 ..........................................................................................................15

W.E. Hall Co. v. Atlanta Corrugating, LLC,
370 F.3d 1343 (Fed. Cir. 2004)............................................................................7, 16

W. Union Co. v. MoneyGram International, Inc.,
2008 U.S. Dist. LEXIS 108129 [31] (W.D. Tex. Nov. 6, 2008) ...........................15, 26

## Federal Statutes

35 U.S.C. § 112.........................................................................................................7

35 U.S.C. § 120.........................................................................................................11

## I.   <u>INTRODUCTION</u>

Plaintiff Prism Technologies LLC ("Prism") asserts that defendant Research In Motion, Ltd. ("RIM") infringes Prism's United States Patent No. 7,290,288 ("the '288 patent").  Pursuant to the Final Progression Order entered in this case (Docket #48), the parties identified twenty-two specific claim terms of the '288 patent which each party believed required construction, exchanged proposed constructions for those terms, and conferred to narrow the dispute.  The parties submitted a Joint Claim Construction Statement to the Court setting forth their respective constructions for the disputed claim terms of the '288 patent (Ex. B, Joint Claim Construction Statement).[1]  (Docket #72).  Prism submits this brief in support of its proposed constructions.

## II.   <u>BACKGROUND</u>

### A.   <u>United States Patent No. 7,290,288</u>

The United States Patent & Trademark Office ("PTO") issued the '288 patent on October 30, 2007.  (Ex. C, '288 patent).  The '288 patent contains 187 claims in total.  Prism presently asserts that RIM infringes the following claims of the '288 patent:  31-35, 38, 41, 51, 54, 56, 58-59, 61, 87-92, 95, 98, 109, 110-113, 115, 117, 119-126, 129-132, 143-145, 149-150, 152-159, 164-167, 178-180 and 184-187.[2]

Prism's `288 patent covers an innovative way of controlling access to computer resources requested by a device using an Internet Protocol network.  More specifically, the system and method disclosed by the `288 patent controls access to computer resources using an authentication server.  The authentication server has an associated database that stores identity data associated with the device and authorization data associated with the computer resources.

---

[1]   All exhibits cited herein are attached to the separately filed Index of Evidence in Support of Prism's Opening Claim Construction Brief.

[2]   Subsequent to the filing of Prism's complaint for patent infringement in this case, RIM initiated a reexamination proceeding before the PTO regarding a limited number of the asserted claims of the '288 patent.  Thus, not all the claims asserted here are subject to reexamination.  There has yet to be an initial Office Action pertaining to the challenged claims of the '288 patent.

The device requests access to computer resources by sending its identity data to an access server which, in-turn, forwards the data to the authentication server in order to authenticate the device. If the device is authenticated, the authorization server then authorizes the device to access to the computer resources.  Upon successful authentication and authorization of the device by the authentication server, the authentication server permits the device to access the protected computer resources.

The claimed inventions of the '288 patent relate generally to a security system for use with computer networks.  The Abstract of the '288 patent describes the invention:

> A method and system for controlling access, by an authentication server, to protected computer resources provided via an Internet Protocol network that includes storing (i) a digital identification associated with at least one client computer device, and (ii) data associated with the protected computer resources in at least one database associated with the authentication server; authenticating, by the authentication server, the digital identification forwarded by at least one access server; authorizing, by the authentication server, the at least one client computer device to receive at least a portion of the protected computer resources requested by the at least one client computer device, based on the stored data associated with the requested protected computer resources; and permitting access, by the authentication server, to the at least the portion of the protected computer resources upon successfully authenticating the digital identification and upon successfully authorizing the at least one client computer device.

(Ex. C, '288 patent).  In its most basic form, the security system comprises four elements, those being: (1) an access server (34 purple), (2) a client computer device (54 pink), (3) a hardware key associated with the client computer device (36 orange), and (4) an authentication server (30 green).  (Ex. C, '288 patent, col. 6, lns. 7-37).  These elements (or steps in the method claims) are adapted to permit access to the protect computer resources (yellow) upon successful authentication and authorization.  Figure 3 of the patent sets forth a very basic overview of the invention (Ex. C, Fig. 3 with descriptions added):



FIG. 3

The purpose of the invention is to secure access to the "protected computer resources." (Ex. C, '288 patent, col. 1, lns. 7-10; col. 34, lns. 30-35). Protected computer resources include computer services, applications, content, files, data or other information. (*Id.*, col. 4, lns. 47-65). The invention controls access to the protected content through an authentication and authorization process utilizing an access server [item 34] and authentication server [item 30]. (*Id.* at col. 17, lns. 4-40). Importantly, the protected resources may be located at the access server itself, or remotely at other servers or databases which are directly or indirectly accessible to the access server. (*Id.*, Fig. 3; col. 6, ln. 25-col. 7, ln. 5).

The client computer device has an associated hardware key or access key. (Ex. C, Fig. 3; col. 6, lns. 34-35). A digital identification is derived from the hardware key. (*Id.*, col. 2, lns. 9-14; col. 19, lns. 30-55). In operation, when the client computer device attempts to access

3

protected computer resources, the digital identification is forwarded to the access server, which in turn forwards the digital identification to the authentication server.

The authentication server database stores: (1) at least a portion of the digital identification of the hardware key for "authentication" purposes and (2) the authorization data associated with the protected computer resources. (*Id.*, col. 1, ln. 49-col. 2, ln. 11). The authentication server determines whether or not a client computer device requesting access to the protected computer resources is "authentic" based upon a comparison of the digital identification associated with the client computer device to the digital identification stored in a database associated with the authentication server. (*Id.*, col. 17, lns. 15-21; col. 6, ln. 44-col. 7, ln. 22).

The authentication server also determines what portion (if any) of the protected computer resources the authenticated client computer device is entitled to access (i.e., authorization). (*Id.*, col. 6, ln. 47-col. 7, ln. 17; col. 11, lns. 8-30). Following successful authentication and authorization of the client computer device, the authentication server permits the client computer device to access the authorized portion of the protected computer resources via the access server.

These inventive concepts are embodied within each claim of the '288 patent presently before the Court. For example, claim 187 of the '288 patent recites:

187. A system for controlling access to protected computer resources provided via an Internet Protocol network, the system comprising:

at least one authentication server having an associated database to store (i) a digital identification associated with at least one client computer device requesting access to said protected computer resources, and (ii) data associated with said protected computer resources;

said at least one client computer device having an associated access key, said digital identification being derived from said access key;

said at least one client computer device adapted to forward said digital identification to at least one access server;

4

said at least one access server adapted to forward, to said at least one authentication server, said digital identification received from said at least one client computer device;

said at least one authentication server adapted to authenticate said digital identification responsive to a request for said protected computer resources by said at least one client computer device;

said at least one authentication server adapted to authorize said at least one client computer device to receive at least a portion of said requested protected computer resources, based on said stored data associated with said requested protected computer resources;

and said at least one authentication server adapted to permit access to said at least said portion of said requested protected computer resources upon successfully authenticating said digital identification and upon successfully authorizing said at least one client computer device.

(Ex. C, '288 patent, col. 51, ln. 1-col. 52, ln. 16).   A complete recitation of the independent claims of the '288 patent containing disputed terms is attached hereto as Exhibit D.  For ease of reference, Prism has inserted a numeric identifier before each disputed claim term which one or both of the parties are asking the Court to construe.  (See Ex. E, Prism's Proposed Constructions with numeric identifiers).

**B.     The Related United States Patent No. 6,516,416**

The patent application which resulted in the issuance of the '288 patent claims priority to an earlier patent application filed by Prism.  More specifically, the '288 patent is a continuation-in-part of related United States Application No. 08/872,710 filed with the PTO on June 11, 1997.[3]  The earlier-filed '710 application issued as United States Patent No. 6,516,416 ("the '416 patent") on February 4, 2003 (Ex. G, '416 patent).  The '288 patent is related to the '416 patent; both patents use common claim terms.

---

[3]      Due to an error by the PTO, the '288 patent is not on its face identified as a continuation-in-part of the earlier-filed '710 application.  The PTO issued a Certificate of Correction to remedy that error.  (Ex. F).

III.   **THE CLAIMS OF THE RELATED '416 PATENT**
       **WERE CONSTRUED IN A RELATED LITIGATION**

  In April of 2005, Prism filed a complaint against several defendants in the District of Delaware alleging infringement of the related '416 patent.   RIM was not involved in the Delaware case.   During the course of the Delaware litigation, the parties submitted briefs in support of their respective proposed constructions of the disputed terms of the '416 patent.   The parties also participated in a *Markman* hearing.   The District Court of Delaware thereafter issued a detailed Memorandum Opinion and Order in which numerous disputed claim terms of the '416 patent were construed as a matter of law.   Copies of the claim construction Order and Memorandum Opinion are attached hereto as Exs. H and I; reported as *Prism Technologies, LLC v. VeriSign, Inc.,* 512 F. Supp. 2d 174 (D. Del. 2007).   Based upon the claim construction, Prism stipulated to entry of judgment of non-infringement.   The Federal Circuit affirmed the stipulated judgment of non-infringement, thereby affirming at least the challenged portions of the Delaware Court's claim construction order.   (Ex. J).

  Many of the same terms that were previously construed by the District Court of Delaware are present in the '288 patent at issue before this Court.   Prism requests that the Court adopt the previous constructions for the terms as determined by the Delaware Court, as those constructions are equally applicable to the claims of both the '416 patent and the '288 patent-in-suit.   (See Section V.A. below).   However, some of the '288 patent terms at issue here differ from terms used in the '416 patent and consequently have not yet been construed.   Those terms are discussed below in Sections V.B and V.C.

IV.   **THE RULES OF CLAIM CONSTRUCTION**

  The claims of a patent define the scope of the invention.   *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc).   The Federal Circuit has emphasized that claim

terms should be given their ordinary and customary meaning which is the meaning that the term would have to a person of ordinary skill in the art:

> The inquiry into how a person of ordinary skill in the art understands a claim term provides an objective baseline from which to begin claim interpretation. That starting point is based on the well-settled understanding that inventors are typically persons skilled in the field of the invention and that patents are addressed to and intended to be read by others of skill in the pertinent art.

*Phillips,* 415 F.3d at 1313 (internal citations omitted).  "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words."  *Id.* at 1314.  Indeed, some claim terms are so simplistic that no further construction is required at all.  *See, e.g., W.E. Hall Co. v. Atlanta Corrugating, LLC*, 370 F.3d 1343, 1350 (Fed. Cir. 2004) (holding that claim term "[s]ingle piece" is "sufficiently clear to make even resort to the dictionary unnecessary").

The claims are also read in view of the specification.  *Phillips,* 415 F.3d at 1315.  The Court should never lose sight that while claims must be construed in light of the specification of which they are a part, limitations from the preferred embodiments (disclosed in the specification) cannot be read into the claims:

> If everything in the specification were required to be read into the claims, or if structural claims were to be limited to devices operated precisely as a specification-described embodiment is operated, there would be no need for claims.  Nor could an applicant, regardless of the prior art, claim more broadly than that embodiment.  Nor would a basis remain for the statutory necessity that an applicant conclude his specification with "claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." 35 U.S.C. § 112.  It is the claims that measure the invention.

*SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985); see also *Phillips*, 415 F.3d at 1323 ("[P]ersons of ordinary skill in the art rarely would confine their definitions of terms to the exact representations depicted in the embodiments.").  Thus, while the specification

may be used to aid in the interpretation of the claims, it may not be used as a source for adding extraneous limitations. *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1328 (Fed. Cir. 2002) (internal citations omitted) ("We have cautioned against limiting the claimed invention to preferred embodiments or specific examples in the specification."); see also *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1331 (Fed. Cir. 2004). The examples described and illustrated in the specification are intended to be just that – examples, not claim limitations. As the Federal Circuit has long held, "Specifications teach. Claims claim." *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1344 (Fed. Cir. 2001).

In addition to consulting the specification, the Court should also consider the patent's prosecution history or file of the proceedings in the Patent Office. *Phillips*, 415 F.3d at 1317. The prosecution history may alter the plain meaning of patent language if the applicant modifies or disclaims a certain meaning. However, not all statements in the prosecution history constitute prosecution disclaimer. *Golight*, 355 F.3d at 1332; see also *Cordis Corp. v. Medtronic AVE, Inc.*, 339 F.3d 1352, 1358 (Fed. Cir. 2003). A disclaimer must be express, and not one that arises through mere inference. *SunRace Roots Enter. Co., Ltd. v. SRAM Corp.*, 336 F.3d 1298, 1306 (Fed. Cir. 2003); *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1326 (Fed. Cir. 2003);

The Court may rely upon extrinsic evidence, which consists of all evidence external to the patent and prosecution history. *Phillips*, 415 F.3d at 1317. "Because dictionaries, and especially technical dictionaries, endeavor to collect the accepted meanings of terms used in various fields of science and technology, those resources have been properly recognized as among the many tools that can assist the court in determining the meaning of particular terminology to those of skill in the art of the invention." *Id.* at 1318.

When applying the aforementioned guidelines, the Court must consider the relationship between claims of related patents such as the '416 and '288 patents. In accordance with the guidance in *Markman*, a court should adopt the construction of previously construed terms in a disputed patent. *IP Innovations LLC. v. Mitsubishi Elect. Corp.*, 2009 U.S. Dist. LEXIS 100647, *6 (N.D. Ill. Oct. 29, 2009) ("There is a presumption that 'a claim term carries the same meaning throughout a particular patent and related patents, including a continuation-in-part.'"); *Rexnord*, 274 F.3d at 1342. The same rule applies to identical claim terms that are used in different patents that issue from the same parent application such as the '416 and '288 patents. *Advanced Cardiovascular Sys. v. Medtronic, Inc*., 265 F.3d 1294, 1305 (Fed. Cir. 2001). It is further presumed that different terms in the claims carry different meanings absent any evidence to the contrary. *CAE Screenplates, Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1317 (Fed. Cir. 2000). When different claim terms are used interchangeably in the specification, however, such terms should be construed to have the same meaning. *Tate Access Floors, Inc. v. Maxcess Techs.,* 222 F.3d 958, 968 (Fed. Cir. 2000). With these rules in mind, the proper constructions are evident.

## V.   **PROPER CONSTRUCTION OF THE DISPUTED CLAIM TERMS**

The disputed claim terms of the '288 patent generally fall into four categories: (1) claim terms that are common to the terms of the parent '416 patent construed by the District Court of Delaware; (2) claim terms that should be provided their plain and ordinary meaning as found in the claim; (3) claim terms that should be given construction as understood by a person of ordinary skill in the art; and (4) claim terms agreed to by the parties.

A.      There Are Nine "Disputed" Claim Terms
        <u>That Have Been Construed In Prior Litigation</u>

As noted earlier, the '288 patent shares many common terms with its parent '416 patent, several of which have already been construed in a separate litigation by the District Court of Delaware.  (Exs. H and I; reported at *Prism Technologies LLC*, 512 F. Supp. 2d 174).  There are nine "contested" claim terms in this case that are similar to those terms construed by the Delaware Court and were considered by the Patent Office during prosecution of the '288 patent.  Specifically, those '288 patent terms include:

[1]      "**server computer**" (claims 31, 87);

[3]      "**protected resources**" (claims 31, 87)[4];

[4]      "**protected computer resources**" (claims 117, 150, 185-187)[4];

[10]     "**identity data" of the client computer device** (claims 31, 87);

[11]     "**identity data" of at least one access server** (claims 117, 150);

[12]     "**digital identification**" (claims 31, 87, 117, 150, 185-187);

[13]     "**hardware key**" (claims 31, 87);

[14]     "**access key**" (claims 117, 150, 185-187); and

[18]     "**authenticating**" and/or "**authenticate**" (claims 31, 87, 117, 150, 185-187).

This Court need not repeat the efforts of the District Court in Delaware.  The Delaware District Court entertained briefing with respect to the nine common terms now in dispute, heard arguments about the proposed constructions, and conducted a one-day *Markman* hearing on November 9, 2006.  (Ex. I, p. 1; s*ee Prism Technologies LLC*, 512 F. Supp. 2d at 180-181.)  The Delaware Court prepared a detailed Memorandum and Opinion setting forth the construction of

---

[4]      The terms "protected computer resources" or "protected resources" are substantially similar to "selected computer resources" that was construed by the Delaware Court.  Hence, those terms warrant a similar construction.

each of the nine common claim terms.  (*Prism Technologies LLC*, 512 F. Supp. 2d at 197-199; Ex. I, Memorandum Opinion).

This *Prism* decision is highly relevant to the claim terms at issue here because the Patent Office considered the Delaware Court's claim construction during the prosecution of the '288 patent-in-suit.  (Ex. K, 5/17/07 Notice of Allowance, attached Form PTO 1449, p. 13).  Prism provided a copy of the Delaware Court's Memorandum and Opinion (construing the common claim terms identified here) to the Patent Examiner who prosecuted the '288 patent, thus, making it part of the intrinsic record.  *IP Innovations LLC*, 2009 U.S. Dist. LEXIS at *6-7 ("Thus, in regard to the instant claim constructions, the court must take into consideration the prior constructions made in *Sony* and *Lexmark*.  In addition, even if such prior rulings concerning the *'780 Patent* family were not presumptively binding in this case, the rulings would form part of the prosecution history and the intrinsic record for the court's primary consideration.").  Specifically, Prism informed the Patent Examiner that there was litigation pending with respect to the parent '416 patent, and that certain common terms had been construed by the District Court of Delaware:

> As set forth in the prior Information Disclosure Statements dated February 14, 2007 and March 16, 2007, the present application is a continuation-in-part of Application No. 08/872,710, filed June 11, 1997, now U.S. Patent No. 6,516,416; upon which Applicant relies for the benefits provided in 35 U.S.C. § 120.
>
> U.S. Patent No. 6,516,416 is the **subject of litigation in the United States District Court for the District of Delaware**, Case No. 1:05-cv-00214-JJF, hereinafter referred to as Litigation 1.
>
> Applicant is submitting, with this Information Disclosure Statement, certain additional litigation documents, such as the **Memorandum Opinion and Order of the U.S. District Court for the District of Delaware, dated April 2, 2007 (the "Order"), in Litigation 1.  The Order construes claims of U.S. Patent No. 6,516,416, from which this pending application claims priority.**

11

(Ex. L, 4/6/07 IDS; emphasis added).  On April 16, 2007, the Patent Examiner for the '288 patent acknowledged that he considered the Order construing the claims of the parent '416 patent.  (Ex. K, 5/17/07 Notice of Allowance (Examiner signing off on IDS, p. 13); Ex. L, 4/6/07 IDS at p. 13).

Prism proposes that the common terms of the '288 and '416 patents be given the same construction.  The Federal Circuit has mandated that common claim terms of a parent and continuation-in-part application generally must be construed consistently.  See *Jonsson v. Stanley Works*, 903 F.2d 812, 818 (Fed. Cir. 1990).  In *Jonsson*, the plaintiff attempted to argue for a different construction of the claim term "diffuse light" in a continuation-in-part application, even though the same term was used in the original parent application.  The Federal Circuit held that statements made with respect to a term in the parent application (similar to those made by Prism here) applied equally to the same term used in a continuation-in-part:

> The '912 patent is the result of a continuation-in-part application from the original '008 application, which led to the '251 patent.  Hence, the prosecution history of the '251 patent and the construction of the term "diffuse light" contained in that patent, is relevant to an understanding of "diffuse light" as that term is used in the '912 patent.  Consequently, as to "diffuse light" in its interpretation of the '912 patent, the district court did not err in relying on "arguments and remarks" made during the prosecution of the '251 patent.

*Id;* see also *IP Innovations, LLC,* 2009 U.S. Dist. LEXIS at *6 (claim terms similar to those of parent patent should not have a different meaning).  This Court should follow the Federal Circuit precedent which dictates that a Court "must interpret the claims consistently across all asserted patents." *NTP, Inc. v. Research in Motion, Ltd.,* 418 F.3d 1282, 1293 (Fed. Cir. 2005); see also, *Microsoft Corp. v. Multi-Tech Sys.,* 357 F.3d 1340, 1350 (Fed. Cir. 2004 (holding that statements made in prosecution of one patent are relevant to the scope of all sibling patents); *Laitram Corp. v. Morehouse Indus.*, 143 F.3d 1456, 1460 & n. 2 (Fed. Cir. 1998) (noting that it was proper to

consider the prosecution histories of two related re-examination patents originating from the same parent, to determine the meaning of a term used in both patents).  There is no doubt that the common terms of the '288 patent and the '416 patent should be construed consistently.

The chart below depicts the nine disputed claim terms of the '288 patent and how the common terms were construed by the District Court of Delaware in the parent '416 patent. (Compare, Ex. H, Order; see also *Prism Technologies LLC,* 512 F. Supp. 2d at 197-99 with Ex. E, Prism's Proposed Construction with numeric identifiers).

| Claim Term | Prism Proposed Construction | Delaware Court Construction |
|---|---|---|
| [1] "**server computer**" (claims 31, 87) | A computer that makes available information or other resources | c.  "First Server Computer" is construed to mean *"a computer that makes available information or other resources"*  (Ex. H, p. 2) |
| [3] "**protected resources**" (claims 31, 87) | Computer services, applications, content, files, data or other information that can be accessed by (either directly or indirectly) said server computer | d.  "Selected Computer Resources of at least a [or said] first server computer" is construed to mean *"computer services, application, or content that can be accessed by (either directly or indirectly) said first server computer."*  (Ex. H, p. 2) |
| [4] "**protected computer resources**" (claims 117, 150, 185-187) | Computer services, applications, content, files, data or other information that can be accessed by (either directly or indirectly) said access server | d.  "Selected Computer Resources of at least a [or said] first server computer" is construed to mean *"computer services, application, or content that can be accessed by (either directly or indirectly) said first server computer."*  (Ex. H, p. 2) |
| [10] "**identity data of the client computer device**" (claims 31, 87) | Data sufficient to determine whether a person, organization and/or computer/software is authentic and/or is entitled to access the protected (computer) resources | j.  "Identity Data" as it relates to the Subscriber Client Computer is construed to mean *"data sufficient for the patented system to determine whether a person, organization, and/or computer is authentic and/or is entitled to assess said selected computer resources."*  (Ex. H, p. 3) |

| Claim Term | Prism Proposed Construction | Delaware Court Construction |
|---|---|---|
| [11] "**identity data of at least one access server**" (claims 117, 150) | Data sufficient to determine whether a person, organization and/or computer/software is authentic and/or is entitled to access the protected (computer) resources | j. & u.  "Identity Data" as it relates to a first server is construed to mean *"data sufficient for the patented system to determine whether a person, organization, and/or computer is authentic and/or is entitled to assess said selected computer resources."* (Ex. H, pp. 3, 7) |
| [12] "**digital identification**" (claims 31, 87, 117, 150, 185-187) | Digital data whose value is known in advance or calculated at the moment | h.  "Predetermined Digital Identification" is construed to mean *"digital data whose value is known in advance or calculated at the moment."*  (Ex. H, p. 2) |
| [13] "**hardware key**" (claims 31, 87) | External hardware device or object from which a digital identification can be generated, derived or read | f.  "Hardware Key" is construed to mean *"external hardware device or object from which the predetermined digital identification can be read."*  (Ex. H, p. 2) |
| [14] "**access key**" (claims 117, 150, 185-187) | "access key" is synonymous with "hardware key" | f.  "Hardware Key" is used synonymously with the terms "Access Key" and "Hardware Access Key" in the specification. (Ex. H, p. 2) |
| [18] "**authenticating**" and/or "**authenticate**" (claims 31, 87, 117, 150, 185-187) | To determine that something is, in fact, what it purports to be | r.  "Authenticate" is construed to mean *"determine that something is, in fact, what it purports to be."* (Ex. H, p. 6) |

Two claim terms identified above differ slightly from the Delaware Court's construction; namely, [3] "protected resources" and [4] "protected computer resources."  The term used in the '416 patent was "selected computer resources."  While the claimed "protected computer resources" and "protected resources" are substantially the same as the "selected computer resources," their use in the '288 patent must necessarily contain "files, data or other information" due to the language of the claims as discussed in Section V.C. below.

As the Federal Circuit has mandated, terms of a parent and continuation-in-part application must be construed consistently.  The nine terms of the '288 patent previously construed by the Delaware Court, must also be construed consistently.

### B.      There Are Five Disputed Terms That
#### Should Be Given Their Plain And Ordinary Meaning

Certain terms of the '288 patent do not need construction – they should be provided their ordinary and customary meaning and should be construed as written.  The meaning of the term is clear from the claim.  Those terms include:

[15]     "**generating**" (claims 31, 87)

[16]     "**deriving**" (claims 117, 150, 185-187)

[17]     "**selectively requiring**" (claims 31, 87)

[21]     "**controlling access**" (claims 31, 87)

[22]     "**permitting access**" (claims 117, 150, 185-187)

(Ex. E).   These terms are "ordinary, simple English words whose meaning is clear and unquestionable."  *Chef Am. Inc. v. Lamb-Weston, Inc.,* 358 F.3d 1371, 1373 (Fed. Cir. 2004) (the term "heating the resulting batter-coated dough" was construed as written).  Thus, the Court does need to apply a special construction to ordinary English terms.  *W. Union Co. v. MoneyGram Int'l, Inc.,* 2008 U.S. Dist. LEXIS 108129 [*31] (W.D. Tex. Nov. 6, 2008).  The terms used in the claims bear a "heavy presumption" that they mean what they say; they should be given the ordinary meaning that would be attributed to those words by persons skilled in the art.  *Tex. Digital Sys. v. Telegenix Inc.,* 308 F.3d 1193, 1202 (Fed. Cir. 2002).  Thus, there is no need for the court to construe each and every term of a claim.  *Phillips,* 415 F.3d at 1314; *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (claim terms "are generally given their ordinary and customary meaning.").

The meaning of terms such as [15] "generating," [16] "deriving," [17] "selectively requiring," [21] "controlling access" and [22] "permitting access" is clear.  The inventors chose those words and not different words for a reason.  They mean exactly what they say.  As such,

the terms should be construed as written.  There is nothing to warrant a departure from the ordinary meaning in favor of a synonym:

> The court agrees with the plaintiff's contention that no construction of the other terms at issue is necessary.  The meaning of the claim language is relatively clear in the context of the patents as a whole.  The disputed language does not contain technical or scientific terms of art, but rather involves the application of the widely accepted meaning of commonly understood words such as "mixture," "compressed," "pressure" and "powered."  The meaning of the language is clear in the context of the drawings and specifications of the patents.
>
> ****
>
> The court finds no support for the defendants' proposed constructions in the language of either the claims or the specifications of the patents.

*Vishay Dale Elecs. v. Cyntec Co*, 627 F. Supp. 2d 1050, 1058 (D. Neb. 2008); see also *W.E. Hall Co. v. Atlanta Corrugating LLC*, 370 F.3d 1343, 1351 (Fed. Cir. 2004).

The District Court of Delaware (construing the term "permitting access" of the '416 patent) also recognized that certain terms should be construed as written.  The Delaware Court applied the plain meaning to the same [22] "permitting access" term that is in dispute with respect to the '288 patent:

> **Permit[ing] access**
>
> Defendants have urged the Court to construe "permit[ing] access" as meaning "authorizing the use of," which they contend reflects the term's ordinary meaning in light of the specification.  However, Defendants have not presented sufficient evidence to warrant departing from the claim language in favor of a synonym. Accordingly the court will construe "permit[ing] access" to mean "permitting the subscriber client computer to access said selected computer resources."

*Prism Technologies LLC,* 512 F. Supp. 2d at 191-92.  Claim 186 demonstrates that the term "permitting" has no special meaning:

> ***permitting access***, by the at least one authentication server, to the at least the portion of the protected computer resources upon successfully authenticating the digital identification and upon successfully authorizing the at least one client computer device.

(Ex. C, '288 patent; see also claims 117, 150, 185, 186 and 187).  The claims recite that the authentication server "permits access" to a portion of the protected computer resources upon successful authentication and authorization.  (*Id.*).  Following RIM's proposal and construing "permitting" to mean "issuing a command," "to grant," or "this command alone determines whether the access server gives … access to the resources" adds an unnecessary and superfluous limitation not warranted by the claim language.  (Ex. E, Prism's Proposed Constructions, item [22]).  It is unnecessary.

As for the terms [15] "generating," [16] "deriving," [17] "selectively requiring" as used in the claims, those terms also do not require any special construction.  RIM proposal to substitute the term "create" for [15] "generating" or [16] "deriving" adds nothing to the claim and simply is not warranted.  (See Ex. E, Prism's Proposed Constructions).  The same is true for the term "selectively requiring."  *Id.*  Substituting the synonym "specifically commanding," as RIM proposes, eviscerates the inventors' conscious decision to use the term "selectively requiring" to define the inventions.  The inventors chose the terms "selectively requiring," "generating" and "deriving."  If they wanted to use different terms, they would have done so.

The terms [15] "generating," [16] "deriving," [17] "selectively requiring," [21] "controlling access" and [22] "permitting access" mean exactly what they say.  Nothing warrants departing from the claim language in favor of a synonym.

### C.   The Claim Terms That Require Construction

There are six terms for which the District Court must offer a construction to the jury.  They include [2] "access server," [5] "client computer device," [7] "Internet Protocol network," [8] "clearinghouse," [9] "authentication server," [19] "authorizing said client computer device," and [20] "to authorize at least one client computer device."  Those are truly the disputed terms in the Court's claim construction process.

1.      **[2] "access server"**

*Proposed Construction:* **"access server"** *means "server software that makes available information or other resources"*

_____

It is presumed that different terms in the claims of a patent carry different meanings. *CAE Screenplates, Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1317 (Fed. Cir. 2000). That rule applies here with respect to the term [2] "access server." As used in the claims of the '288 patent, the term "access server" is different from the term "server computer." Construction of the term [1] "server computer" has already been addressed above. As opposed to a "server computer" (which is a computer that makes available information or other resources), the term "access server" is software which is used to carry out such actions. The installation of such software on a computer would result in the claimed "server computer."

Support for Prism's proposed construction of the term [2] "access server" can be found in the specification of the '288 patent. Figure 1 illustrates a secure transaction server (item 34) which corresponds to the claimed "server computer". As indicated in Figure 1, secure transaction server software resides on the secure transaction server. This software is representative of the claimed [2] "access server". (See also Ex. C, '288 patent, software flowchart diagrams, Figs. 15-20) (making reference to "server application").

Prism's proposed claim construction is also consistent with relevant extrinsic evidence. The word "server" is a term of art which typically refers to a computer program (i.e., software) that provides services to other computer programs in the same or other computers. (Ex. M, definition of "server" from *The Internet Dictionary*, SYBEX, Inc., 1995). It is common for technology companies to sell software which is marketed with reference to the term server. As one example, defendant RIM sells software identified as "BlackBerry Enterprise Server". (Ex.

N, advertisement for BlackBerry Enterprise Server).  This is the meaning which the term [2] "access server" was intended to carry as used in the claims of the '288 patent.

The term "server" alternatively refers to the computer that a server program runs on.  (Ex. M, definition of "server" from *The Internet Dictionary*, SYBEX, Inc., 1995).  When the inventors of the '288 patent intended for a claim term to embody this alternate definition, a term indicative of hardware was used – "server <u>computer</u>".  That is the distinction which the patentee elected to make between these two related terms.  The term [1] "server computer" is used with reference to a physical computer, while the term [2] "access server" is used with reference to the <u>software</u> which resides on such a computer.  Prism's proposed constructions for these two terms ("server computer" versus "access server") are consistent with that distinction.

### 2.    [5] "client computer device"

> ***Proposed Construction:  "client computer device"*** *means "a programmable electronic device capable of storing and accessing data"*
> _____

In the context of the related '416 patent, the District Court of Delaware previously construed the term "subscriber client computer" to mean "a computer that a subscriber uses to access selected computer resources of the first server computer."  (Ex. H, p. 2; see also *Prism Technologies,* LLC, 512 F. Supp. 2d at 197 (definition "i. Subscriber Client Computer").  The term [5] "client computer device" differs from the term "subscriber client computer" in two ways.  First, in contrast to the term "subscriber client computer", there is no language recited in the term [5] "client computer device" that would limit use of the claimed computer device to a subscriber.  Second, the patentee's use of the phrase [5] "computer device" is intended to broadly apply to all forms of programmable electronic devices.  Indeed, one of ordinary skill in the art would understand a computer to be just that – a programmable electronic device capable of

storing and accessing data.  (Ex. O, *Merriam-Webster Collegiate Dictionary*, 10 Ed. (1993), p. 237).

Again, a presumption exists that different claim terms carry different meanings, *CAE Screenplates, Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1317 (Fed. Cir. 2000). Prism's proposed construction of the term [5] "client computer device" aligns with that legal principle, and further comports with the specific differences which exist between the term "client computer device" and the previously construed term "subscriber client computer device". Accordingly, the term [5] "client computer device" should be construed to mean "a programmable electronic device capable of storing and accessing data."

### 3.      [7] "Internet Protocol network"

> ***Proposed Construction: "Internet Protocol network"*** *means "a network utilizing TCP/IP, UDP/IP, HTTP or equivalent protocol"*
> _____

Various protocols may be used to communicate data across a computer network.  The term "Internet Protocol" is a term of art broadly used to refer to one such group of protocols. (Ex. P, *Novell Dictionary of Networking* (1997)).  "Internet Protocol" may be used in many forms of computer networks including Internet, internet, intranet and extranet.

In the context of describing a preferred embodiment of the invention, the specification of the '288 patent provides examples of protocols which fall within the scope of the broader term "Internet Protocol":

> The account holder access components preferably use the transmission control protocol/internet protocol (TCP/IP) and transaction datagram protocol/internet protocol (UDP/IP) to communication with each other.  Any communication that needs to go through the web server or the web browser will follow the hyper text transfer protocol (HTTP) which is based on TCP/IP.  These protocols are well known to those skilled in the art.  The account holder's PC accesses web sites using HTTP.  The web server and secure transaction server 34 communicate with each other using UDP/IP.  The secure transaction server 34 and the transaction clearinghouse 30 preferably communicate with each other using TCP/IP and the

> transaction clearinghouse servers communicate with a database using open
> database connectivity (ODBC) drivers most commonly over a TCP/IP network.
> The transaction clearinghouse administration software 32 communicates with the
> database using an ODBC driver, most commonly over a TCP/IP or IPX network.

(Ex. C, '288 patent, col. 5, lns. 46-63).  The exemplary forms of Internet Protocol identified in

the specification of the '288 patent provide support for Prism's construction of the term [7]

"Internet Protocol network", namely, "a network utilizing TCP/IP, UDP/IP, HTTP or equivalent

protocol."

### 4.     [8] "clearinghouse" and [9] "authentication server"

***Proposed Construction:***   ***"clearinghouse"*** *means "a computer having software capable of storing data and controlling access to protected resources"[5] and*

***"authentication server"*** *means "software capable of storing data and permitting access to protected computer resources"*

_____

While the meaning of the term [8] "clearinghouse" and [9] "authentication server" are

close, the two terms have a different meaning when the claims, specification and prosecution

history are reviewed.  The term [8] "clearinghouse" is used in claims 31 and 87 while the term

[9] "authentication server" is used in claims 117, 150, 185, 186 and 187 of the '288 patent.  (Ex.

C, '288 patent).

### a.     Construction of [8] "clearinghouse"

The [8] "clearinghouse" is a computer with software installed that performs certain tasks

as required by the claims.  The clearinghouse may host a database and an authentication server,

among other components such as transaction server and administration software.  (Ex. C, '288

patent, col. 4, lns. 32-42).  The language of claim 31 recites the "clearinghouse" as follows:

---

[5]    The proposed construction of the term "clearinghouse" has been amended to include the term "computer."  As explained in the brief, the proposed construction is consistent with the claims, the specification and the prosecution history.

a **clearinghouse** that stores (i) identity data of said client computer device and (ii) authorization data associated with said protected resources;

**\*\*\*\***

said **clearinghouse** authenticating the identity of said client computer device responses to a request for said protected resources of said server computer by said client computer device;

said **clearinghouse** authorizing said client computer device to receive said requested protected resources based on said stored authorization data; and,

said **clearinghouse** controlling access to said requested protected resources of said server computer responsive to successful authentication of said client computer device making the request and responsive to successful authorization of said client computer device.

(Ex. C, '288 patent, col. 37, lns. 35-37, 47-59; see also claim 87) (emphasis added).

The specification of the '288 patent demonstrates that the "clearinghouse" is a computer which comprises a number of subcomponents including databases and server software:

The transaction clearinghouse provides a secure interface to the secure transaction servers 34, which enables the secure transaction servers 34 to authenticate the account holders and to send account holders' transaction data to the transaction clearinghouse. The transaction clearinghouse consists of a structured query language (SQL) database, which hosts the transaction clearinghouse database as well as an account holder authentication server for authenticating account holders on behalf of the secure transaction servers and processes online applications.

(*Id.*, col. 4, lns. 26-42).

The transaction clearinghouse 30 contains the account and transaction database storage capability. The transaction clearinghouse 30 controls the authentication and authorization of account holders for individually enabled secure transaction web servers.

(*Id.*, col. 6, ln. 47-col. 7, ln. 2). As detailed in Fig. 3 of the specification, the "clearinghouse" (item 30) includes components such as the "authentication server," the "transaction data server" and the "clearinghouse database." (*Id.*, Fig. 3; col. 6, lns. 57-65).

22

Similarly, the Delaware Court recognized that a clearinghouse would include both computer hardware and software when it construed the term "clearinghouse means" as:

> 1.     The first claimed function is "storing identity data of said first server computer and the identity data of each of said subscriber client computers."  The corresponding structure is "a processor programmed to store the identity data of the first server computer in a structured query language (SQL) database using an open database connectivity (ODBC) driver."
>
> 2.     The second claims function is "adapted to authenticate the identity of said first server computer."   The corresponding structure is "*that portion of the clearinghouse software* (e.g. a user authentication daemon 58) which authenticates the subscriber client computer, and equivalents thereof."
>
> 3.     The third claimed function is "adapted to authenticate the identity of said first server computer."   The corresponding structure is "*that portion of the clearinghouse software* (e.g. a user authentication daemon 58) which authenticates the first server, and equivalents thereof."
>
> 4.     The fourth function is "adapted to permit access to said selected computer resources."   The corresponding structure is "*that portion of the clearinghouse software* which authenticates the first server and equivalents thereof."

(Ex. H, pp. 5-6; see also *Prism Technologies, LLC*, 512 F. Supp. 2d at 197).  Prism's proposed construction is consistent with the Delaware Court's understanding of a clearinghouse.  The claimed [8] "clearinghouse" necessarily is a computer that contains various software components such as the authentication server.

### b.     Construction of [9] "authentication server"

The [9] "authentication server," in turn, is a component of the [8] "clearinghouse" comprising software associated with a database for storing (1) client digital identification data and (2) data associated with the authentication process.  (Ex. C, claims 185-187).  The [9] "authentication server" is further comprised of software adapted to authenticate the digital identification (by determining that something is what it is purported to be) and adapted to authorize the receipt of a portion of the protected resources (by determining whether to grant

access to certain recourses).  Finally, the "authentication server" permits access to the requested

protected computer resources.  Claim 185 recites:

> at least one ***authentication server*** having an associated database to store (i) a
> digital identification associated with at least one client computer device
> requesting access to said protected computer resources, and (ii) data associated
> with said protected computer resources
>
> ****
>
> said at least one ***authentication server*** adapted to authenticate said digital
> identification
>
> ****
>
> said at least one ***authentication server*** adapted to authorize said at least one client
> computer device to receive at least a portion of said requested protected computer
> resources, based on said stored data associated with said requested protected
> computer resources

(Ex. C, 288 patent, col. 51, ln. 4-col. 52, ln. 9).  The wording of the claim itself supports Prism's

claimed [9] "authentication server."

The "authentication server" software controls access to protected resources as supported

in the specification of the '288 patent:

> The transaction clearinghouse 30 also has an account holder authentication
> daemon 58 that processes the requests for account holder authentication by the
> secure transaction servers 34 a daemon 58 is a program that is not invoked
> explicitly, but lays dormant waiting for one or more necessary conditions to occur
> such as an incoming request from one of its client programs.
> For every account holder authentication request, the account holder authentication
> daemon 58 first insures it is communicating with an authentic secure transaction
> server 34, and then it queries the transaction clearinghouse database server 56 to
> find the account holder's information.  Based on this information, it sends an
> authentication response back to the secure transaction server 34.

(*Id.*, col. 6, ln. 47-col. 7, ln. 2).

The "[9] authentication server" comprises software.  Consequently, "authentication

server" should be construed to mean "software capable of storing data and permitting access to

24

protected computer resources."

     **5.**    **[19] "authorizing said client computer device" and [20] "to authorize at least one client computer device."**

>*Proposed Construction*:  *"**authorizing**" means "determining whether to grant access to"*
>*"**to authorize**" means "to determine whether to grant access to"*

_____

Prism's proposed construction of [19] "authorizing" and [20] "to authorize" is consistent with the manner in which a person of ordinary skill in the art would understand the term based on the claims, the specification and the prosecution history.  The term "authorizing" appears in each of the independent claims of the '288 patent in dispute.  By way of example, in claim 186, the term is recited as follows:

> ***Authorizing***, by at least one authentication server, the at least one client computer device to receive at least a portion of the protected computer resources required by the at least on client computer device, based on the stored data associated with the requested protected computer resources.

(Ex. C, '288 patent, col. 50, lns. 57-62).  Likewise, claim 187 recites:

> Said at least one authentication server adapted ***to authorize*** said at least one client computer device to receive at least a portion of said requested protected computer resources, based on said stored data associated with said requested protected computer resources

(*Id.*, '288 patent, col. 52, lns. 5-10; emphasis added).  Simply, the claim term [19] "authorizing" or [22] "to authorize" indicates that authentication server determines whether to grant access to at least a portion of the protected computer resources.  That is how a person skilled in the art would read and understand the claims.

The *IBM Dictionary of Computing* also supports Prism's construction, namely "authorizing" should be construed to mean "to determine whether to grant access to."  (Ex. Q, *IBM Dictionary of Computing* (1994), p. 41).  The *IBM Dictionary of Computing* defines "authorization" as:

> **Authorization**   (1) In computer security, the right granted to a user to communicate with or make use of a computer system. (T)   (2) An access right. (3) The process of granting a user either complete or restricted access to an object, resource, or function.  (4) See also clearance.

(Ex. Q, *IBM Dictionary of Computing* (1994), p. 41); see also *W. Union Co. v. MoneyGram Int'l,*

2008 U.S. Dist. LEXIS 108129 (W.D. Tex. Nov. 6, 2008) (the district court construed the claim

term "authorizing" to have its "ordinary meaning" which means "to give permission for").

The specification of the '288 patent further supports Prism's proposed construction of the

term "authorize":

> Authorization, on the other hand, enables authenticated account holders to access transaction services based on the permission level they are granted.

(Ex. C, '288 patent, col. 1, lns. 35-38).

> The secure transaction server 34 authorizes each web transaction that involves account holder access of transaction services and does so by communicating with the account holder software 36 to make the account holders login.  If the login is successful, the secure transaction server 34 initiates a session and collects all transaction data so that at the end of a session it can send the transaction data to the transaction clearinghouse.

(*Id.*, col. 7, lns. 23-30).  In each of the references in the specification of the '288 patent, the terms

"authorization" or "authorizing" are used in a manner to determine whether to grant access to the

protected resources.

### D.      The Parties Have Agreed To The Construction Of One Term

The parties have agreed that the claim term [6] "untrusted network" shall be construed to

mean *"a public network with no controlling organization, with the path to access the network*

*being undefined and the user being anonymous."*  (Ex. B, Joint Claim Construction Statement).

This is the same construction of the term "untrusted network" that the Delaware Court provided

with respect to the '416 patent.  (Ex. H, p. 1).

## VI.  __CONCLUSION__

As discussed in detail above, Prism's proposed claim constructions stay true to the plain

language of the claims of the '288 patent and are properly based upon the applicable canons of

claim construction.  For all of the foregoing reasons, Prism requests that the Court adopt Prism's

proposed constructions in their entirety as set forth in the table attached hereto as Exhibit E.

Respectfully submitted,

PRISM TECHNOLOGIES LLC


Dated:  November 6, 2009                By:  Dean D. Niro_____
                                             Raymond P. Niro
                                             Dean D. Niro
                                             Paul C. Gibbons
                                             Robert A. Conley
                                             NIRO, SCAVONE, HALLER & NIRO
                                             181 West Madison Street, Suite 4600
                                             Chicago, Illinois 60602
                                             Phone: 312-236-0733
                                             Fax: 312-236-3137
                                             rniro@nshn.com
                                             dniro@nshn.com
                                             gibbons@nshn.com
                                             rconley@nshn.com


                                             Michael C. Cox, #17588
                                             Daniel J. Fischer, #22272
                                             KOLEY JESSEN P.C., L.L.O.
                                             One Pacific Place
                                             1125 South 103rd Street, Suite 800
                                             Omaha, Nebraska, 68124
                                             Phone: 402-390-9500
                                             Fax: 402-390-9005
                                             Michael.Cox@koleyjessen.com
                                             Dan.Fischer@koleyjessen.com
                                             *Attorneys for Plaintiff*
                                             *Prism Technologies LLC*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on November 6, 2009, I electronically filed the foregoing **PRISM'S OPENING CLAIM CONSTRUCTION BRIEF** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to:

Scott W. Breedlove
sbreedlove@velaw.com
Allen W. Yee
ayee@velaw.com
VINSON & ELKINS, LLP
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201
Tel: (214) 220-7700
Fax: (214) 220-7716

Morgan L. Copeland, Jr.
mcopeland@velaw.com
William L. LaFuze
wlafuze@velaw.com
VINSON & ELKINS, LLP
1001 Fannin Street, Suite 2500
Houston, Texas 77002
Tel: (713) 758-2661
Fax: (713) 758-5561

Richard P. Jeffries
rickjeffries@clinewilliams.com
CLINE, WILLIAMS, WRIGHT,
JOHNSON & OLDFATHER, LLP
One Pacific Place
1125 South 103rd Street, Suite 320
Omaha, Nebraska 68124
Tel: (402) 397-1700
Fax: (402) 397-1806

*Attorneys for Research In Motion, Ltd.*

/s/ Dean D. Niro
Attorney for Prism Technologies LLC